# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID L. RIVARD,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. SA CV 17-00806-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. <u>INTRODUCTION</u>

Plaintiff David L. Rivard ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. <u>PROCEEDINGS BELOW</u>

On April 16, 2014, Plaintiff applied for SSI alleging disability beginning January 1, 2014. (Administrative Record ("AR") 130, 194.) His application was denied initially on June 27, 2014, and upon reconsideration on October 7, 2014. (AR 67, 73.) On October 9, 2014, Plaintiff filed a written request for hearing, and a

hearing was held on December 10, 2015. (AR 24, 79.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 26-46.) On February 10, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since January 1, 2014. (AR 17.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on May 5, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date ("AOD"). (AR 12.) At **step two**, the ALJ found that Plaintiff's chronic abdominal pain and cervical spine radiculopathy are severe impairments. (*Id*.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 13.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform the following: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and frequently perform the postural activities.

(*Id.*)

///

///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a computer engineer and technical engineering manager, and therefore the ALJ did not proceed to **step five**. (AR 17.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of the decision. (*Id.*)

## III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered the opinion of Plaintiff's treating physician; and (2) whether the ALJ properly considered Plaintiff's testimony. (JS 3.) Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of his treating physician and for finding Plaintiff less than fully credible. (*See* JS 4-5, 11-13.) The Commissioner disagrees. (*See* JS 6-9, 13-16.) For the reasons below, the Court agrees with Plaintiff on the issue of his credibility and remands on that ground.

### A. The ALJ's Credibility Determination Is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony. (JS 11-13.) The Commissioner argues that the ALJ's credibility findings are supported by substantial evidence. (JS 16.)

#### 1. Plaintiff's Testimony

Plaintiff is 60 years old and has a college education, with bachelor's degrees in physics and computer science. (AR 28-29.) Plaintiff last worked as a technical manager and firmware engineer. (AR 29.)

Plaintiff testified that when he stopped working, his main medical issues were daily headaches and severe chest and upper abdominal pains. (AR 31-32.) Plaintiff explained that the pain is in his chest area, but some doctors think that it is a gastrointestinal issue and refer to it as "upper abdominal" pain. (AR 31.) Plaintiff's daily abdominal pain fluctuates between a four and an eight on a ten-point scale, depending on how much codeine he has taken. (AR 37.) Plaintiff stated that his pain starts out at a high level, but it comes down with his medication. (*Id.*) His pain is the same whether he is sitting, standing, or lying down. (AR 38.)

4

Plaintiff also suffers from dizziness, which is worsened when he takes his pain medication. (AR 32.) Plaintiff saw a specialist for his dizziness, who did a thorough examination and diagnosed Plaintiff with a vestibular problem in his left inner ear. (*Id.*) Plaintiff explained that this is different from a benign form of vertigo that some people occasionally suffer from; his diagnosis is a medical problem that had flared up. (AR 32-33.)

Plaintiff testified that his headaches, dizziness, and chest pain are his "really debilitating" medical conditions. (AR 33.) Plaintiff stated that his other conditions are "somewhat annoying but not enough to limit [his] functionality," but in combination, they "make it that much more difficult." (*Id.*) Plaintiff explained that he was "very diligent" in trying to find the cause of his symptoms, and he provided a list of at least 20 specialists who had examined him. (AR 34.) Plaintiff stated that his doctors have told him that they have run out of ideas about what other tests they can run. (AR 36.)

Plaintiff currently takes codeine for pain relief. (AR 35.) He also takes Ambien to help him sleep and "get through the pain." (*Id.*) Plaintiff explained that the codeine sometimes gives him headaches and contributes to his dizziness, depending on how much he takes. (AR 36.) Plaintiff stated that he gets "caught in the middle" between the side effects and his severe pain, and he tries to balance and alternate "to get some level of functionality." (*Id.*)

Plaintiff testified that he could occasionally lift about 50 pounds, and he has no problems with sitting. (AR 38.) Plaintiff stated that on a typical day, he tries to do laundry or dishes, prepare meals, eat, clean up, and take care of his personal hygiene. (*Id.*) Occasionally, he pays bills and goes to the grocery store or a medical appointment, but "it takes all day to do those things" when he is in pain or dizzy. (AR 38-39.) Plaintiff stated that sometimes he "can't do anything at all" or has to wait an hour or two before he can do something. (AR 39.) Plaintiff testified that the amount of physical effort required to clean his house is "just beyond [his]

capability," and he pays for a private cleaning company to come once a month. (AR 39-40.) Plaintiff also tries to read, but sometimes he has to give up due to his headaches and dizziness. (AR 39.) Plaintiff explained that he has hobby magazines that have stacked up for several months because he has not been able to keep up with reading them. (*Id.*)

Plaintiff was diagnosed with sleep apnea a few years ago, but CPAP machines did not improve his symptoms. (AR 40.) Plaintiff explained that the machines caused a lot of lung pain and woke him up in the middle of the night, so he stopped using them "because the treatment was worse than the problem." (*Id.*)

Plaintiff testified that, although he claimed that he became disabled in January 2014, it has been "a continuing problem" for at least 15 years. (*Id.*) Plaintiff stated that his condition has become progressively worse. (*Id.*)

### 2. **Applicable Legal Standards**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

///

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 16.) The ALJ relied on the following reasons: (1) routine and conservative treatment; (2) activities of daily living; and (3) lack of objective medical evidence to support the alleged severity of symptoms. (AR 14, 16.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Routine and Conservative Treatment

The ALJ found that Plaintiff's treatment has been "essentially routine and/or conservative in nature (except for injections)." (AR 16.) An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ noted that the record reflects significant gaps in Plaintiff's treatment history and relatively infrequent doctor visits for his allegedly disabling symptoms. (AR 16.) However, the medical records from Plaintiff's treating physician contain notations that are separated by only a few weeks, from the AOD of January 2014 through November 2015. (*See* AR 672-80.) Plaintiff also underwent additional tests and treatment with other doctors during this time period. (*See, e.g.*, AR 200-03, 206-16 (March 2014); AR 217-24, 232, 849 (April 2014); AR 196-99, 204 (May 2014); AR 755-57 (December 2014); AR 759-68, 850-60 (January 2015); AR

773-76 (April 2015); AR 777-87 (May 2015); AR 788-93 (June 2015).)

The ALJ also observed that Plaintiff's treatment was conservative and that Plaintiff's use of medications "does not suggest the presence of impairments which [are] more limiting than found in this decision." (AR 16.) However, treatment records reveal a long history of prescriptions for codeine, a narcotic pain medication, from at least January 2011 until at least November 2015. (AR 302, 669-680.) *See Childress v. Colvin*, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("It is not obvious whether the consistent use of such a narcotic (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony, and therefore requires further explanation."). Plaintiff also received epidural steroid injections, which yielded "no change in pain." (AR 196; *see* AR 232, 402.) The ALJ correctly acknowledged that the injections were not routine and conservative. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."). But the ALJ's general, conclusory findings that Plaintiff's use of medications did not suggest more limiting impairments, and that his treatment was "routine and/or conservative in nature" are insufficient. *See Lester*, 81 F.3d at 834.

Finally, although the ALJ stated that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" (AR 16), Plaintiff has seen numerous specialists who have run out of tests to perform while trying to identify a treatable cause of Plaintiff's symptoms (AR 34, 36; *see* AR 861-62). "A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre–Gutt v. Astrue,* 382 F. App'x 662, 664 (9th Cir. 2010); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[C]onservative course of treatment . . . is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

///

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Activities of Daily Living

The ALJ noted that Plaintiff has "engaged in a somewhat normal level of daily activity and interaction." (AR 16.) Specifically, the ALJ observed that Plaintiff admitted to going to the grocery store and to doctor appointments, driving, laundry, washing dishes, preparing meals, cleaning up, maintaining his personal hygiene, and paying bills. (*Id.*)

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his other statements, conduct, and daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff performs some daily activities does not detract from his overall credibility, as the record does not show that this consumes a substantial part of Plaintiff's day. Although Plaintiff testified that it "takes all day" to do some activities, he explained that is because he is slowed down by his pain and dizziness. (AR 38-39.) Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities

are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison*, 759 F.3d at 1016). Indeed, Plaintiff testified that he sometimes needs to wait an hour or two before doing things, and there are times when he "just can't do anything at all." (AR 38-39; *see* AR 162.)

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting pain testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective testimony. Accordingly, remand is warranted on this issue.

### B. The Court Declines To Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ improperly rejected the opinion of Plaintiff's treating physician. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony.

On remand, the ALJ shall reassess Plaintiff's subjective allegations in light of SSR 16-3p – Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016), which would apply upon remand. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and

proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 8, 2018

*Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**